Next case for argument is No. 16-4019. Mr. Thompson, you may proceed.  And how do you pronounce your client's name? I wasn't sure. It's Groenewold. Very well. Thank you. Good morning, Your Honor. May it please the Court, Counsel. This Section 1983 action reaches this Court after a Rule 12b-6 motion to dismiss was granted by the District Court. This case involves the circumstances of Dr. Gerald Groenewold, who had had nothing but positive, even superlative evaluations by those several presidents of the University of North Dakota to whom he reported directly. as the Director of Energy and Environmental Research Center, the EERC, for some 27 years, from July 1st, 1987, until Dr. Groenewold was terminated from his position on May 30th, 2014, being 68 and a half years old on that day. The reference in the record to Dr. Groenewold's status as having nothing but positive, even superlative evaluations is the complaint, paragraphs 35 to 37, appearing at the appellant's appendix, pages 21 and 22. The actual evaluations at attachment 4 to the complaint, those appearing at the appellant's appendix, pages 134 to 151. This case involves claims by Dr. Groenewold based on the deprivation of both his pre-termination and post-termination procedural due process rights, the deprivation of Dr. Groenewold's substantive due process rights, and First Amendment-based retaliation, a claim based on that. It's within the context of these claims that I'd like to isolate on a sequence of events that I think, well, I don't think, I respectfully submit, interrelate with one another and relate specifically to both the pre-termination due process claim, the post-termination due process claim, and Dr. Groenewold's substantive due process claim. Dr. Groenewold, after having... Are you familiar with our recent decision in Keiths v. Adams? Keiths v. Adams, I am not, Your Honor. I'm aware of the court's decision on pre-termination and post-termination due process in Raymond. Well, Keith is 840 F-3rd. This case is 847 F-3rd, 585 Raymond v. Board of Regents of the University of Minnesota. 847 F-3rd, 585. The pinpoint pages would be 589 and 590. And I don't know specifically the context in which the court was referring to the other case, but... The point being here, I'd like to isolate on these facts. Number one, Dr. Groenewold is seated in his office, May 5, 2014. In the door come armed University of North Dakota police officers and escort him off the premises. The same day, there's an action taken by the University of North Dakota president Kelly, defendant Kelly, Pelley Kelly in this case, in which Kelly suspends or places Dr. Groenewold on administrative leave. On May 14th, President Kelly provides notice of proposed termination. On May 28th, Dr. Kelly provides his written response to these conclusory allegations in President Kelly's notice. President Kelly's notice is Appendix 213. Dr. Groenewold's, excuse me. On May 29, President Kelly, excuse me, May 23, President Kelly provides notice of intent to dismiss for cause. That's Appellant's Appendix 204 to 207. On May 28, five days later, Dr. Groenewold provides a response to the best ability that he can. And one takes a look at the content and substance of the notice of intent to dismiss for cause at Appellant's. And by the way, these are attachments to the complaint as well. Well, you've laid out the sequence in the brief and it's in the district court order. So, in short though, Dr. Groenewold was provided notice of the intent. He's provided reasons why. Now, you argued that those aren't sufficient reasons, but for procedural due process, he was given notice. And they had an independent, at least a third person, maybe you don't think he's independent, review it and confirm the decision to terminate Dr. Groenewold. What about that pre-termination, it violates due process? Well, and that's really important. And I'll go straight to what was going on here. And something Dr. Groenewold doesn't even find out about until June 14th or something like that. What happens is they get Groenewold out of the building. They hire a consultant from Minneapolis to interview a small number of EERC employees after Dr. Groenewold's forced departure by armed UND officers. The consultant, he knows nothing about this. But that's after his termination, so that's not part of the pre-termination. No, no, that's before his termination. That occurred prior to his termination. The so-called independent hearing officer had access to this report. So did President Kelly. What was the date he was actually terminated? May 30, 2014. You said the consultant was June of 2014. No, I said he doesn't find out about it until June. Okay. This guy comes in. This is a classic substantive due process file. Okay, now we're talking. For which there is no requirement of exhaustion of remedies or anything else. Let me finish. I think you're... It's all related is my point. Well, it isn't really related. I mean, one horse is that you didn't get due process. And the other is that you got due process, but they lied to you. Now, those are two different causes of action. My point is that's why these events interrelate. They relate to pre-termination due process, post-termination due process, and substantive due process. And this is the point I'm trying to make. I argued Morris v. Clifford here back in 1990. And one. And it sets forth the standard here. You can't put the cart before the horse. You can't make a decision to fire somebody and then go out and develop reasons to do it. In that case, so-called procedural due process, in that case is, by the way, 903F second 50574. It's in our briefs. It's not in your briefs. It is. Morris? Morris, M-O-R-R-I-S. Oh, Morris. Morris. It's my New Jersey accent, Your Honor. I've lived in North Dakota since 1979, and I can't get rid of it, apparently. That case says you cannot make a decision and then try to justify it after the fact. What they did is they've got a guy who's had meritorious service here. No negative evaluations. And what they do is they send the cops in, get them off, get them out of the building, interview 14 out of 235 EERC employees, 6% of the staff, and then they prepare a report. Dr. Groenewald doesn't even know this is going on. They had access to it, and I've got five minutes for rebuttal, but it's important for me to finish this thought. Dr. Groenewald doesn't know this is happening. This is what's going on before the decision is made. They got there on May 5th, and University Council had access to it on May 14th. Dr. Groenewald doesn't know the existence of this consultant's report until June 25. It's in appendix page 58, paragraph 118 of the complaint. June 25, 2014, several weeks after his termination, he receives an e-mail copy of the report from a reporter employed by the Grand Forks Herald. Now, the dates on the report, this is all the sequences in the complaint, pages 58 and 59 of our appendix. Your time is running out. Was he ever given a chance to rebut any of these allegations against him, and did he pursue his administrative relief to the very end? He wasn't. He was not. He was not given an opportunity to address the report, which was the substantive basis for the president's decision, and the so-called hearing officer's one-page report. The hearing officer never talked to Dr. Groenewald. So the point being here, in Raymond, there's no requirement for exhaustion if you allege pre-termination due process violation. And that is, again, 847 F. 3rd, 585. That's nothing new. Right. So we allege this. Right. And our point being here, you have a report that's the basis. What we're doing here is we're trying to go out and find reasons why we made the decision. And we filed an opinion on November 22nd called Lyons v. Vaught, which in my view forecloses your First Amendment arguments. So are you familiar with it, and do you have any response? I'm not familiar with the case, Your Honor. I would say that the protected statements are referenced at pages 12 through 14. Lyons v. Vaught, like the case that came up on twice, and it's all about what's protected and what isn't. These were not insular comments made by Dr. Groenewald relating to his specific employment circumstances. I think that it's very clear that in the brief pages that I cited, and I will cite them again. No, no, no. I didn't want the argument. I wanted to know whether you were familiar with the case. I'm not. I'll reserve the rest of my time for rebuttal. Thank you, Your Honor. Very well. Thank you. We'll hear from counsel for Kelly. May it please the Court, Counsel, Sarah McGrain, on behalf of the appellees, the State Board of Higher Education, and former President Kelly. The question that was recently posed by counsel was the issue of the report that was issued by the private consultant who was hired. It's important to note that there was an anonymous report that got filed with the University of North Dakota regarding Dr. Groenewald's behavior. And based upon that behavior, an independent consultant was hired and did conduct a workplace investigation into the behavior that existed in the workplace. That is the third basis listed in the notice of intent to terminate by President Kelly. There were seven independent reasons that were given in the notice of termination. The third were the behavioral issues that were investigated by that consultant. Additionally, it's important to note that though counsel for Dr. Groenewald has alleged that his client was denied meaningful discovery and meaningful opportunity to find out the university's bases, under North Dakota Open Records Law, he did submit an open records request and received over 6,000 pages of documents. And many of the documents that were included in those 6,000 pages were going to be exhibits at the administrative hearing that Dr. Groenewald chose not to participate in. There were no less than two pre-hearing conferences before which Dr. Groenewald elected not to participate just days before the hearing and after the university had filed its brief on the matter, as well as all of its exhibit lists and its witness lists, and produced the same to Dr. Groenewald. Dr. Groenewald has a procedural due process claim and a substantive due process claim, neither of which stand here. First, for the pre-termination procedural due process claim, there was plenty of process given, even in the minimal standard that's required by the courts. Dr. Groenewald was given a notice of intent to terminate with seven separate reasons stated, 25 subparts supporting those reasons. Additionally, although he did not have the right to engage in formal discovery under the rules of civil procedure, he did have the right to request records under North Dakota Open Records Law and did, in fact, receive over 6,000 pages. Pre-termination? Pre-termination, Your Honor. The other issue that was alleged by counsel is the failure to provide the investigator's report, and that is the report by the third-party investigator, Mary Dobbins. As the court is aware, there is no pretrial right to discovery in a pre-termination context. However, we know here that Dr. Groenewald, in fact, did have the report and did have access to the information. And that report was titled what, or who prepared it? By Mary Dobbins. She was a third-party investigator hired by the University of North Dakota regarding those workplace issues. Is there a record on it for you? The report is not, Your Honor. Is it in the record before the district court? The report is not, Your Honor. However, there is mention to the report because, again, it's the third item listed in the seven. You made that point. I apologize, Your Honor. I'm sorry. I'd just like to know what's in the record. It is not in the record. Is there any dispute that it was in the 6,000 pages? There is no dispute, Your Honor. It was included in the 6,000 pages? Yes, Your Honor. Additionally, we then look at the post-termination procedure, and there we have a failure by Dr. Groenewald to participate. And Dr. Groenewald's response for not participating is he didn't think it would be a fair process because the rules of civil procedure and the rules of evidence were not going to be followed. It's true that under the State Board of Higher Education policies, there is no requirement to follow those rules strictly. However, the Office of Administrative Hearings, which is the entity that conducts these hearings, have trained hearing officers, most of whom do at least informally follow those rules. And again, there was a week set aside for Dr. Groenewald to present his witnesses, his testimony, his evidence, and he chose not to participate in that process. So his failure to participate in that process, in fact, waives his arguments here because he has not exhausted his administrative remedies. Dr. Groenewald also makes a substantive due process claim, and here he argues that as a contracted employee with the University of North Dakota, he had a right to continued employment. The university, the State Board of Higher Education, and President Kelly disagree. The right to continued employment is not something that has been held for contracted employees with the state. Instead, those types of privileges or enjoyments typically only apply to professors who have full tenure. Here, we have to show that the president had irrational reasons or something that shocks the conscience in order for Dr. Kelly or Dr. Groenewald to make a claim of substantive due process. And we certainly do not have that type of an allegation here. Instead, we have Dr. Groenewald disagreeing, and I would... Don't you have to have a property or liberty interest to raise a procedural due process claim? Yes, Your Honor. So that argument goes to all three. Yes, Your Honor, it does. Because the court did not rule on that basis. You're right, Your Honor, because the court found that he didn't need to go there given he found a failing on another prong. And so I think that the issue that Dr. Groenewald is alleging is that he disagrees with the reasons that were provided by President Kelly, and he would vehemently disagree with the reasons provided by President Kelly. That is not enough to state a substantive due process claim, and for those reasons we believe that that claim fails as a matter of law. Additionally, we have qualified immunity on behalf of President Kelly for the claims asserted against him in his individual capacity, and that would apply to all of the claims asserted against the former president. For Dr. Groenewald to succeed, he has to show that the issues that he was terminated for involved him speaking as a private citizen. And when Dr. Groenewald is using his university-sponsored email to email a member of the State Board of Higher Education, we think that as a matter of law we need go no further. This may be an irrelevant question, but didn't Dr. Kelly in a letter state that Dr. Groenewald should address any concerns with him, Dr. Kelly, but later Dr. Kelly refused to talk with him? Your Honor, there were occasions where Dr. Kelly and Dr. Groenewald had difficulty communicating. They did have regular meetings, and they had, my understanding, it's monthly meetings, and there was a breakdown in communication where a third party ended up being present and taking minutes of the meetings given some of the disputes between the two individuals, but there were regular scheduled meetings. Was there a report by Mr. McGregor? Yes, Your Honor. And what did his report show, and was a copy ever given to Dr. Groenewald? Yes, Your Honor. The report was relatively brief. It was one page, and it was an examination of the grounds that were provided by President Kelly and an examination with a response that was provided by Dr. Groenewald, and that response by Mr. McGregor was, in fact, given to Dr. Groenewald. It was. Yes, it was, Your Honor. And if we go back to the issue of qualified immunity, the question of do we have a justification for the President to be taking the action that he did, and was there a comment by Dr. Groenewald that in some way impacted him speaking as a private citizen, and the university and former President Kelly believe that there is no such case here. And with that, I have completed my argument early, which I don't think has ever happened. Well, just to restate, if you would, from your perspective, what is the sum and substance of the substantive due process deprivation claim? Your Honor, there are three prongs. The first is, is there a right to continued employment? And the university, the State Board of Higher Education, and President Kelly believe that there is not. In order for there to be that substantive right to employment, it has to be more than just a contract of employment. It has to be something that would be akin to a professor having tenure. There was no such property right here in employment by Dr. Groenewald. Well, as I understand it, Dr. Groenewald acknowledges that he could have been terminated for no reason had he been given a year's pay, which may have been the smart thing to do in this case, but that's a whole side issue. But what, does that create any entitlement? It does not, Your Honor. That is a notice provision that's in the State Board of Higher Education. I mean, does the year pay create any entitlement? No, Your Honor. It's a notice requirement, and so the individual can be required to work during that notice period or not work during that notice period. And no, there are no cases that I'm aware of that have held that that one year of pay is sufficient to create that property interest in employment. The cases that I'm familiar with that have held that there is, in fact, a contracted right to continued employment are where we have tenured professors where they basically have lifetime employment unless there is truly a truly bad act that would justify termination of their employment. Additionally, under the substantive due process reason, we have to have some irrational reason that shocks the conscience that was provided by President Kelly for the termination. In the record is, in fact, that termination notice of intent to terminate with the seven grounds and the 25 subparts to those grounds. And nothing in those stated reasons has ever been alleged by Dr. Grunwald to be irrational or shocking the conscience. Certainly, Dr. Grunwald disagrees with many of those reasons, and I would readily submit that he vehemently disagrees with those reasons. But again, we have to have something that's irrational, that has no basis in fact, or that shocks the conscience. And we simply don't have that here. You've probably already addressed this, but once again, how do you specifically reply to the argument that he sets forth in his brief that under our Morris v. Clifford case, an employee has a substantive due process right to be free from discharge for reasons that are arbitrary and capricious? Is that the sum and substance of his claim? I think in part, Your Honor. But under the case law that exists for substantive due process, we have to have something that's irrational or shocks the conscience, not something that's merely... And the conscience is a required element. Yes, Your Honor. According to the U.S. Supreme Court. Yes, Your Honor. If it isn't conscience-shocking, there's no claim. Yes, Your Honor. I would agree with Justice Loken on that point, Your Honor. And what we have here in the notice of intent to... Didn't we judge by special concurrence in that St. Louis case? But anyway, memory sometimes fades. Well, and I apologize, but I had to read up on your substantive due process decisions because I think that there has been a little bit of a tightening of the line and loosening of the line. But the standard that has remained throughout is that it must allege that the government action was sufficiently outrageous or truly irrational, and that is something more than arbitrary, capricious, or in violation of state law. And that is from Christensen v. West Branch Community School District, which is 674 Fed 3rd 927. And I believe that's the standard that's been consistently applied by that court. And for those reasons, Dr. Grunwald cannot make his claim here. In our unbanked decision in the St. Louis case, I can't remember the name. Yes, Your Honor. If a panel misinterpreted, if a later panel didn't state the unbanked court's rule correctly, go with the unbanked court. Yes, Your Honor. Again, you're... What is the state's or Dr. Kelly's strongest point? I shouldn't ask you to say that, but... Do you rely upon his waiver of the post-deprivation due process? Yes, Your Honor. I think it's important to note that where we were in that process, we were literally days before the hearing. The university had provided its brief to Dr. Grunwald. It had provided all of its exhibits to Dr. Grunwald. It had provided its witness list. We were literally days before the hearing when Dr. Grunwald chose not to participate. Thank you. Thank you, Your Honors. I'd like to make, just note that in our brief, main brief, page 19, actually footnote 2, the North Dakota Supreme Court's held that regulations adopted by the State Board of Higher Education as part of its policy manual were part of the contract between the institution and the employee, and we cite Hump v. State and Ellis v. NDSU for that proposition. I need to make clear now that it is completely untrue that Dr. Grunwald had 6,000 pages, or any documents, from the University of North Dakota provided to him prior to his termination. I refer the Court to page 41 of our appendix and its correspondence from Dr. Grunwald dated June 18, 2014. He did not have access to any documents prior to his termination, did not have access to this big report that's referenced on page 205 of our appendix that is part of the complaint where counsel just admitted, understood, So the fact that it came between the notice that you're terminated and the administrative hearing that he was entitled to is... Your Honor, please, the facts here are, this report formed the basis for number 3. Okay? He's asked to... In relation to the hearing he chose not to pursue. This is post-termination. This is post-termination. Yes, a hearing... There was no hearing before termination. But your post-termination process covers that. Your Honor, first of all, the ultimate decision maker after, in the post-termination process, was Kelly himself. That's acknowledged. The District Court is in error on that respect. Can you answer my question? Yeah. Forget the documents before the hearing to which he was entitled. The hearing... Forget whether it's pre or post. He had a right to administrative hearing, right? The administrative... Right. And the administrative... Get the documents before that... Correct. But at that time, your Honor, first of all, the administrative hearing, the officer makes whatever her decision is and it goes back to Kelly. It's closed-circuit television. That's one of the biggest problems. That's the problem with the District Court's decision. Everyone acknowledges that the ultimate decision maker under the regulations was President Kelly. He made the initial decision. He commissioned this report... We have to decide what's constitutionally required. You may have very good arguments to admit us to a North Dakota state court that this wasn't fair and it didn't follow the procedures that the university had adopted. Oh, it did. It absolutely did. That's the problem. I need to make this one point because it's pivotal. Okay, yes. President Kelly was the one who would have made the ultimate decision after he'd already done all these things prior to that point. And pre-termination, you have a report that's the basis for Paragraph 3 of Kelly's letter that he never even sees. No, that's not a due process violation. I'll ask the final one. How, again, do you address the argument that your client waived his post-termination procedural due process right to a hearing? Post-termination due process. He argues that the structure... It's not mere futility. It's the structure of the process where you have... In other words, he waived it because it would have been ineffectual? He waived it because it would have been ineffectual and it would have been fundamentally unfair to have the original decision-maker make the ultimate decision. And yet we don't know because he never availed himself of that hearing. So we have to accept your allegation that it would have been so unfair that it would have been a mockery to even proceed with it. It would have been a mockery given the fact that the president takes all of these actions. He then would be, after the hearing, would be the ultimate decision-maker. And so... And one final point. We... And it's in the appellee's appendix, page 57 of the appendix of the appellee. We asked... We state, I state, in a brief pre-hearing on September 3, 2014, the attorneys for the NDOS should seek written approval from the chancellor or the State Board of Higher Education to enter into a stipulated agreement that the final decision in this matter will be made either by the chancellor or by the majority of the State Board of Higher Education. That never happened. Had that happened, we would have gone through with the hearing. But to have the same decision-maker... You've made your point. Thank you. We thank both sides for the arguments in the briefs. The case is now submitted, and we will take it under consideration.